**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

EUGENE BROOKS, III,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:25-cv-0396-DJC-ICD

FINDINGS AND RECOMMENDATIONS

Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 14, 19, 20). For the reasons discussed below, it is recommended that Plaintiff's motion for summary judgment be denied, Defendant's cross-motion for summary judgment be granted, and the Commissioner's final decision be affirmed.

The Court reviews the Commissioner's final decision to determine whether it is based on proper legal standards and supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The record, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If

substantial evidence supports the administrative findings, or if conflicting evidence supports a particular finding, the Commissioner's finding is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229–30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(g) and 416.920(a)-(g). The sequential evaluation proceeds as follows:

Step 1 — Determine whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled, and the claim is denied;

Step 2 — If the claimant is not engaged in substantial gainful activity, determine whether the claimant has a severe impairment; if not, the claimant is presumed not disabled, and the claim is denied;

Step 3 — If the claimant has one or more severe impairments, determine whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled, and the claim is granted;

Step 4 — If the claimant's impairment is not listed in the regulations, determine whether the impairment prevents the claimant from performing past work considering the claimant's residual functional capacity; if not, the claimant is presumed not disabled, and the claim is denied;

Step 5 — If the impairment prevents the claimant from performing past work, determine whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled, and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(g) and 416.920(a)-(g).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted,

or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. §§ 423(d)(1)(A). The claimant must provide evidence of a physical or mental impairment of such severity that the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant bears the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden shifts to the Commissioner to show that the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d at 1340; Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 879 F.2d at 501.

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on September 20, 2021. See CAR 131.[1] In the application, plaintiff claims disability began on December 31, 2016. See id. Plaintiff's claim was initially denied. Id. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on April 4, 2024, before an Administrative Law Judge (ALJ). In a May 1, 2024, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): degenerative disc disease; major depressive disorder; generalized anxiety disorder; and schizophrenia;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: the claimant can perform medium work; he can lift and carry 50 pounds occasionally and 25 pounds frequently; he can stand and/or walk for 6 hours in an 8-

[1] Citations are the to the Certified Administrative Record (CAR) lodged on June 4, 2025, ECF No. 13.

> hour day; he can sit for 6 hours in an 8-hour day; the claimant can perform simple, routine tasks that are not fast paced and that have no strict production demands; the claimant can have occasional contact with supervisors, coworkers, and the public; he can perform low stress work, which is defined as occasional decision-making and occasional changes in work setting;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 134-42.

The Appeals Council denied Plaintiff's request for review on September 13, 2024, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed this action for judicial review.

## III. DISCUSSION

Plaintiff raises four principal issues on appeal: (1) the ALJ failed to provide specific, clear, and convincing reasons to reject his subjective symptom testimony; (2) the ALJ improperly utilized daily activities to discredit his allegations; (3) the ALJ improperly "cherry-picked" clinical notes to paint an artificial picture of mental improvement; and (4) the ALJ failed to limit Plaintiff to one-to-two step tasks under Rounds v. Comm's Social Sec. Admin., 807 F.3d 996 (9th Cir. 2015) following a finding of a moderate limitation in concentration, persistence, or pace. See ECF No. 14.

### A. Plaintiff's Subjective Symptoms Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General or boilerplate findings are legally insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the complaints. Brown-Hunter v. Colvin, 806 F.3d 487, 493-94 (9th Cir. 2015). Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v.

Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

At Step 4, the ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant generally alleges that he is disabled due to depression, bipolar, anxiety, and lack of concentration (Exhibit 3E/2). In his written

> submissions, he wrote that he has deficits in lifting, bending, reaching, remembering, completing tasks, concentrating, following instructions, and getting along with others (Exhibit 8E/6). He also wrote that he has issues handling stress and does not do well with crowds (*Id* at 5, 7). Additionally, he wrote that he suffered an accident and has a hernia in his back that is painful (*Id* at 1).
>
> CAR 137.

The ALJ then provided the following analysis:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are not entirely consistent with the objective medical evidence, the claimant's longitudinal medical history, as well as with some of the claimant's own endorsements. Specifically, while the claimant testified and reported that he suffered a back injury during an automobile accident, he testified that he is able to lift about fifty pounds and stand or walk for about five or six hours at a time. Additionally, despite his allegations, he testified that he continues to apply for sales associate jobs. Further, despite his mental allegations, he generally demonstrated unremarkable mental functioning during multiple examinations over the course of 2021, 2022, and 2023 (Exhibits 3F/24 and 6F/6, 10).
>
> The record shows that the claimant complained of suffering a back injury during an automotive accident (Exhibits 2F/4, 7 and 5F/6, 14). However, despite these reports, the claimant demonstrated generally unremarkable physical functioning (Exhibits 2F/6-7 and 5F/13-14). Additionally, the record shows that the claimant received conservative treatment of ibuprofen and acetaminophen for his back pain (*Id*). Further, the claimant testified that he is able to lift about fifty pounds and is able to stand and/or walk for five to six hours at a time. He also testified that he is able to mow the grass and has been able to exercise and play basketball during the relevant period.
>
> Similarly, the claimant alleges some mental deficiencies; however, the claimant lacks the objective medical evidence to substantiate the totality of his allegations (Exhibits 3F/16, 24 and 6F/6, 10). The claimant wrote in his function report that he has deficits remembering, following instructions, completing task, concentrating, getting along with others, and handling stress (Exhibit 8E/6-7). Additionally, he testified that he has deficits in memory, paying attention, and being around other people. He also testified that his medication works, but he feels like he may need something else in addition to help with getting angry. However, the claimant testified that he continues to apply for jobs as a sales associate and is able to go out with his friends.
>
> The claimant underwent telehealth visits and other mental status examinations during the relevant period (Exhibits 2F; 3F; 4F; 5F; and 6F). During these examinations, the claimant, at times, complained of suffering from hallucinations and reported suffering from anxiety and depression (Exhibit 3F/1, 15-16). He also, at times, showed limited insight and communication (*Id* at 13, 15-16). However, the claimant was cooperative and pleasant during a separate examination in 2021 (*Id* at 24).

> Additionally, he demonstrated attentive concentration during an examination in 2021 and exhibited normal attention span with normal memory during multiple other examinations (Exhibits 3F/16 and 6F/6, 10). Further, he showed no serious mental abnormalities during an examination in 2022 and 2023 while exhibiting generally unremarkable mental functioning (Exhibit 6F/6, 10).
>
> Turning to the claimant's treatment and activities of daily living, the claimant testified that he takes Seroquel to help with his mood, and the record shows that he took ibuprofen and acetaminophen for pain. Regarding his activities of daily living, he testified that he is applying for jobs and currently mowing his neighbor's lawn. He also testified that he is able to lift about fifty pounds, stand or walk for about five to six hours at a time, grocery shop, perform household chores, and perform his own personal care. He also testified that at some point during the relevant period he has attended church services, gone to the gym, played his guitar, played basketball, and gone out with his friends.
>
> Considering the objective evidence of the claimant's degenerative disc disease, major depressive disorder, generalized anxiety disorder, and schizophrenia, including physical examinations, mental examinations, and treatment notes, in addition to other evidence, including, the claimant's testimony and reports regarding his treatment and ability to perform activities of daily living, in the light most favorable to the claimant, I find the claimant is able to perform less than full range of medium work. Specifically, because the claimant testified that he can lift fifty pounds and stand and/or walk for five or six hours at a time, the claimant can lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk for six of eight hours; and sit for six of eight hours. Because the claimant testified that he has deficits in memory and completing tasks but showed intact memory and attention during multiple examinations, the claimant can perform simple, routine tasks that are not fast paced and have no strict production demands.
>
> Because the claimant testified that he takes medication to help him with his mood because he has issues getting along with others, but he testified that he is able to spend time with friends and has been to the grocery store and church during the relevant period, the claimant can have occasional contact with supervisors, co-workers, and the public. Additionally, because the claimant testified that he has deficits handling stress but also stated that he can perform his own personal care, perform household chores, mow his neighbor's lawn, and apply for jobs, the claimant can perform low stress work, which is defined as occasional decision-making and occasional changes in work setting.
>
> CAR 137-39.

Plaintiff contends that the ALJ failed to demonstrate a connection between the objective medical evidence and specific portions of Plaintiff's subjective statements and testimony found not to have weight. See ECF No. 14-1, pp. 3-7. Plaintiff compares the "conclusory boilerplate" which was rejected as inadequate in Lambert v. Saul with similar language in the ALJ opinion in

issue. 980 F.3d 1266, 1277 (9th Cir. 2020); See ECF 14-1 at 6. This would be a winning argument if such "conclusory boilerplate" was the only analysis in the opinion. Unlike in Lambert, the ALJ in this case went on to cite specific, cogent reasons that subjective statements and testimony were not found to have weight when contrasted with the objective medical evidence.

For example, the ALJ cites Plaintiff's ability to lift "about fifty pounds and stand or walk for about five or six hours at a time." CAR 138. The ALJ also contrasted Plaintiff's testimony with his continued applications for sales associate jobs. Id. The ALJ also noted the contradiction between Plaintiff's testimony and the findings of multiple examinations, noting that "despite his mental allegations, he generally demonstrated unremarkable mental functioning during multiple examinations over the course of 2021, 2022, and 2023 (Exhibits 3F/24 and 6F/6, 10)." Id. These are examples of connections drawn by the ALJ between the objective medical evidence and specific subjective statements and testimony found not to have weight. The ALJ has supported her conclusions with numerous specific, cogent reasons. Rashad, 903 F.2d at 1231. Therefore, the ALJ's conclusions are supported by substantial evidence and Plaintiff's argument is rejected.

**B. The Use of Activities of Daily Living**

Plaintiff claims the ALJ failed to establish that his daily activities directly contradicted his specific claims or met the threshold for transferable work skills. ECF No. 14, p.7.

A claimant's daily activities may be used to discount testimony of disabling pain, but the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not in any way detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair,

885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Plaintiff contends that the ALJ did not adequately explain how daily living activities contradict the claimant's testimony or analogize to transferable work skills under Orn v. Astrue. See ECF 14-1 at 7. The ALJ cited various activities of daily living to discount Plaintiff's subjective statements and testimony. See CAR 137-39. Specifically, the ALJ cited Plaintiff's ability to mow the grass, exercise, go out with friends, perform other household chores and personal care activities, play guitar, and play basketball. An adverse credibility finding is warranted "if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace." Burch, 400 F.3d at 681.

But, as Orn requires, the ALJ did make specific findings regarding both Plaintiff's daily activities and competing testimony to conclude that Plaintiff's testimony was exaggerated. Orn, 495 F.3d at 639. The ALJ stated specifically that the ability to lift fifty pounds, stand or walk for six hours at a time, mow the neighbor's lawn, apply for jobs, along with the aforementioned daily living and recreational activities, shows that Plaintiff's strength, mood, memory, social skills and attention deficits were not so crippling that he could not perform low stress work. CAR 138-39. The ALJ went on to analogize contact between friends and church congregants with "supervisors, co-workers, and the public." This satisfies the requirement that the ALJ make specific findings relating to daily activities and their transferability to the workplace when concluding that a claimant's daily activities warrant an adverse credibility determination. Burch, 400 F.3d at 681. Therefore, because the ALJ made specific findings corroborating her conclusions, the use of daily living activities to make adverse credibility determinations was not improper.

///

**C. Alleged Cherry-Picking Objective Evidence**

Plaintiff also argues that the ALJ impermissibly cherry-picked isolated metrics of compliance, such as being noted as "cooperative and pleasant," while turning a blind eye to psychiatric notes documenting ongoing delusions, auditory commands, and a loose cervical disc following a motor vehicle collision. See ECF No. 14-1, pp. 8-10.

"Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Woods v. Kijakazi, 32 F.4th 785, 788 (9th Cir. 2022), quoting Burch, 400 F.3d at 679. Plaintiff concedes that the ALJ noted Plaintiff's hallucinations and paranoia during the relevant time frame of 2016-2018 but contends that the ALJ ignored that an examination in 2021 also recorded these symptoms. See id. Plaintiff argues that the ALJ painted a picture of recovery and omitted details in the record which show Plaintiff's ongoing "mental health problems." See id. Plaintiff also says that reports by a nurse practitioner from 2022 are "far more likely to be Mr. Brooks deflecting when faced with an unknown new provider than substantial evidence of literal night-and-day massive improvement." Id. at 10. In other words, Plaintiff believes less weight should be given to the mental examinations from 2022 and 2023 and the existence of hallucinations and paranoia in 2021 should be dispositive. But the fact that the ALJ weighed complex and contradictory evidence differently than Plaintiff would is not cherry-picking. By Plaintiff's own admission, his history of mental illness and all relevant documentation of such was considered.

Defendants characterize this objection as urging the court to emphasize an alternative set of facts. See ECF No. 19 at 10. This court agrees with the Defendants' characterization. Even when the facts on record may suggest more than one rational interpretation, substantial evidence supports the ruling of the ALJ and therefore her conclusion must be upheld.

**D. Translation of Moderate Limitations into the Residual Functional Capacity (RFC) Assessment**

Finally, Plaintiff alleges that the ALJ committed legal error under Rounds, 807 F.3d 996. ECF No 14-1, pp. 10-11.

Where uniform guidelines to determine disability status are insufficient, the ALJ may employ the testimony of a vocational expert to determine the claimant's limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985). The ALJ may employ the vocational expert's testimony to inform her decision on a claimant's individual capacity. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids at Step 5 in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones, 760 F.2d at 998; see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts, 66 F.3d at 184. Specifically, where the Medical-Vocational

Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart, 856 F.2d at 1341.

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Plaintiff argues that the ALJ's vocational findings are flawed because the jobs identified by the ALJ are inconsistent with Plaintiff's mental residual functional capacity. See ECF No. 14-1, pg. 10. Plaintiff also contends that the ALJ failed to resolve a conflict between the jobs identified and the definitions contained in the Dictionary of Occupational Titles (DOT). See id. at 10-11.

In determining that Plaintiff is not disabled, the ALJ provided the following vocational analysis:

> If the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.29. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:
>
> A. Industrial Cleaner, which has a DOT code of 381.687-018, and is medium, unskilled work with a SVP of 2, and there are approximately 750,000 such jobs in the national economy;
>
> B. Cleaner II, which has a DOT code of 919.687-014, and is medium, unskilled work with a SVP of 1, and there are

> approximately 125,000 such jobs in the national economy; and
>
> C. Hand packager, which has a DOT code of 920.587-018, and is medium, unskilled work with a SVP of 2, and there are approximately 150,000 such jobs in the national economy.
>
> The vocational expert's testimony is well-supported, uncontradicted, and consistent with the DOT except with regard to any non-exertional limitations that are not specifically addressed by the DOT, including but not limited to, low stress work and interactions with others (SSR 00-4p). The vocational expert, Kristine Handley, relied upon her education and approximately twenty years of experience in assessing the vocational impact of such restrictions. Thus, I accept her testimony as an accurate representation of the claimant's vocational status.
>
> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

CAR 141-42.

According to Plaintiff:

> The ALJ Opinion here found a "moderate" limitation to concentration persistence and pace. [AR 135]. This is the exact same limitation in *Rounds v. Comm's Social Sec. Admin*., 805 F.3d 996, 1001 (9th Cir. 2015), which found that a consequent limitation to "simple one to two step tasks" was incompatible with DOT job codes requiring Reasoning level Two. Simply put, where the ALJ Opinion here found the same impairment level as that in *Rounds*, it should have assessed the same RFC limitation, or explained why it deviating [sic] from *Rounds*. The failure to at least explain what facts here distinguish this case from prior controlling authority is legal error. . . .

ECF No. 14-1, p. 10.

In Rounds, the ALJ found the claimant had moderate limitations to concentration and was limited to performing simple one- to two-step tasks. 805 F.3d 996, 1002 (9th Cir. 2015). Among other things, the court held that it is incoherent to find a claimant capable of GED Reasoning Level 2 while simultaneously finding they were only capable of one or two step tasks, which is the essence of Reasoning Level 1. See id. at 1004. Without an explanation for the conflicting RFC and the demands of Level Two reasoning, the court held that substantial evidence could not support the ALJ's Step Five findings. See id.

Here, Plaintiff argues that the ALJ's decision in this case parallels the contradiction in Rounds because Plaintiff was also found to have "moderate" limitations to concentration. This argument, however, assumes that "moderate" limitations to concentration, persistence and pace requires a finding that Plaintiff is only capable of one- to two-step tasks. But as the Defendant correctly argues, Rounds does not hold that moderate limitations in concentration require an ALJ to find a limitation to one to two step tasks. See ECF No. 19 at 11. The issue in Rounds was whether the RFC limitation was compatible with the ALJ's Step Five finding that the plaintiff could perform occupations that required GED Reasoning Level 2. 805 F.3d at 1003. The ALJ is no more obligated to distinguish this case from Rounds as every other case where the same or similar limitations are found—which is to say there is no obligation at all. Unlike in Rounds, the record shows consistent findings and substantial evidence to support them. Because there is substantial evidence supporting the ALJ's decision, her judgment will stand.

For Social Security benefits hearings, the DOT is the default presumption for disability classifications. See Massachi v. Astrue 486 F.3d 1149, 1150 (9th Cir. 2007). Moreover, the ALJ has an affirmative responsibility to ask about any possible conflict between vocational expert evidence and information provided in the DOT. Id. The ALJ may, however, rebut the presumption of applicability of the DOT when expert testimony exists that is supported by persuasive evidence contradicting the DOT. See Murry v. Apfel, 1999 U.S. App. LEXIS 28911, 1, 9 (9th Cir. 1999) (holding that the Administrative Law Judge is not bound by the DOT descriptions but can instead rely on the testimony of the vocational expert and own findings specific to the individual plaintiff before the Administrative Law Judge); see also Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (holding that the ALJ can rely on vocational expert's testimony as to (1) the jobs a claimant can work in given the limitations and residual functional capacity and (2) the availability of these jobs on a national scale); see also Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (concluding that vocational experts have the authority to testify whether a particular plaintiff would be able to perform specific jobs within DOT subcategories); Distasio v. Shalala, 47 F.3d 348, 350 (9th Cir. 1995); see also Barker v. Secretary of Health and Human Svcs., 882 F.2d 1474, 1478 n.1 (9th Cir. 1989) (holding that a plaintiff

restricted to sedentary work is not automatically barred from performing all "light" jobs when plaintiff was still capable of performing a subcategory of “light” jobs); see also Terry v. Sullivan, 903 F.2d 1273, 1277 (9th Cir. 1990).

Plaintiff argues:

> Furthermore, where the RFC added limitation to fast paced work, no strict production demands, and low stress work, and the VE gave cleaner and hand packager job codes that typically have speed and/or quota demands, there is an apparent conflict with the DOT that was not resolved, which is also legal error. Where there is “an apparent conflict between the vocational expert's testimony and the DOT… the ALJ is required to reconcile the inconsistency.” *Zavalin* v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015); [See, AR 46-48 (no reconciling in transcript)]. This is also legal error here.

ECF No. 14-1, pp. 10-11.

Plaintiff’s argument is not persuasive. As outlined above, the ALJ identified a conflict with the DOT definitions with respect to jobs identified by the vocational expert which involved low stress work and interactions with others. See CAR 141-42. The ALJ expressly relied on the vocational expert’s testimony, which was based on the expert’s experience, to resolve any conflict. Plaintiff’s assertion that the ALJ failed to resolve an apparent conflict is simply not correct.

///

///

///

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1. Plaintiff's motion for summary judgment (ECF No. 14) be denied;
2. Defendant's cross-motion for summary judgment (ECF No. 19) be granted; and
3. The Commissioner's final decision be affirmed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **14 days** after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within **14 days** after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 15, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE